**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SUSAN LEE BARKER,
        *Plaintiff-Appellant,*
        v.
RIVERSIDE COUNTY OFFICE OF
EDUCATION,
        *Defendant-Appellee.*

No. 07-56313
D.C. No.
CV-07-00274-SGL
OPINION

Appeal from the United States District Court
for the Central District of California
Stephen G. Larson, District Judge, Presiding

Argued and Submitted
December 12, 2008—Pasadena, California

Filed October 23, 2009

Before: Harry Pregerson and Dorothy W. Nelson, Circuit
Judges, and James K. Singleton, Senior District Judge.

Opinion by Judge Pregerson

---

*The Honorable James K. Singleton, United States District Judge for the District of Alaska, sitting by designation.

14293

## COUNSEL

Janice S. Cleveland, Law offices of Janice S. Cleveland, Riverside, California, and Gary S. Bennett, Law Offices of Gary S. Bennett, Laguna Hills, California, for the plaintiff-appellant.

Jennifer D. Cantrell and Mark W. Thompson, Atkinson, Andelson, Loya, Ruud & Romo, Riverside, California, for the defendant-appellee.

## OPINION

PREGERSON, Circuit Judge:

Susan Lee Barker was employed by the Riverside County Office of Education as a Resource Specialist Program teacher for students with disabilities. She brought suit against her employer based on constructive termination arising out of an intolerable work environment. Barker's complaint alleged that her supervisors at the Riverside County Office of Education retaliated against her after she voiced concerns that the Riverside County Office of Education was not complying with requirements of federal and state law in how it provided educational services to its disabled students. The district court dismissed Barker's lawsuit for lack of standing. Barker argues that she has standing to sue the Riverside County Office of

Education pursuant to the anti-retaliation provisions of both section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act ("ADA"). We agree with Barker and therefore reverse and remand.

## I.  Background

Barker was employed as an itinerant Resource Specialist Program teacher for students with disabilities within the Alternative Education Program of the Riverside County Office of Education from May 13, 2002 through August 1, 2006. Indeed, Barker was the most experienced special education teacher at the Riverside County Office of Education. Barker was regularly asked by other teachers to interpret educational test results, and she received three or four telephone calls per day from her colleagues requesting her opinion and assistance in regard to special education issues with students.

Beginning as early as 2003, Barker voiced concerns to her supervisors that the special education services provided by the Riverside County Office of Education to its disabled students were noncompliant with federal and state law. In May 2005, Barker and a coworker filed a class discrimination complaint with the U.S. Department of Education's Office for Civil Rights. The class discrimination complaint filed with the Office for Civil Rights alleged that the Riverside County Office of Education denied its disabled students a free appropriate public education that they are entitled to receive under federal and state law.

In June 2005, Barker's supervisors at the Riverside County Office of Education first learned that Barker filed the class discrimination complaint with the U.S. Department of Education's Office for Civil Rights. In the constructive termination action now before us, Barker alleges that her supervisors then retaliated against her throughout the following school year by

1. intimidating Barker for filing the class discrimination complaint with the Office for Civil Rights;

2. failing to respond to Barker's emails and phone calls;

3. excluding Barker from important staff meetings;

4. changing Barker's work assignments to sites further from her home;

5. reducing Barker's caseload even though the Riverside County Office of Education's Alternative Education's disabled student population increased; and

6. refusing to allow Barker to fill in for other teachers during their vacations.

Barker further alleged that she was constructively terminated on August 1, 2006 because her supervisors subjected her to an intolerable work environment.

On July 13, 2005, Barker submitted a written complaint to the U.S. Department of Education's Office for Civil Rights, alleging that the Riverside County Office of Education retaliated against her for advocating on behalf of her students with disabilities and for filing a complaint with the Office for Civil Rights. The Office for Civil Rights subsequently conducted an investigation into Barker's complaint by gathering evidence through interviews with Barker and fifteen current and former Riverside County Office of Education staff and administrators, and reviewing documents and records submitted by Barker and the Riverside County Office of Education.

On June 16, 2006, the Office for Civil Rights determined that the "preponderance of the evidence showed that [the Riv-

BARKER v. RIVERSIDE COUNTY OFFICE OF EDUCATION   14299

erside County Office of Education] retaliated against [Barker] in violation of Section 504 [and] Title II . . . ." The Office for Civil Rights further stated that "[a]dvocacy on behalf of disabled students on issues related to their civil rights, and the filing of [Office for Civil Rights] complaints, are protected activities under Section 504 and Title II."

Barker then filed a complaint in federal district court contending that the Riverside County Office of Education violated the anti-retaliation provisions of both § 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act by retaliating against her after she advocated on behalf of her students with disabilities. In August 2007, following the Riverside County Office of Education's Fed. R. Civ. P. 12(b)(6) motion, the district court found that Barker did not have standing to sue under either statute and dismissed her claim with prejudice. Barker timely appealed.

## II.   Standard of Review

The district court's dismissal of an action pursuant to Fed. R. Civ. P. 12(b)(6) is reviewed de novo. *Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169, 1172 (9th Cir. 1999). "Because this is an appeal from the dismissal of an action pursuant to Fed. R.Civ. P. 12(b)(6), we accept as true the facts alleged in the complaint." *Id.* at 1171. Moreover, we must draw inferences in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## III.   Discussion

### A.   Section 504 of the Rehabilitation Act of 1973

Barker contends that she has standing[1] to sue her employer,

---

[1] Although Barker's standing to sue the Riverside County Office of Education pursuant to the Rehabilitation Act and the ADA is under review in this case, Barker unquestionably meets the constitutional standing require-

the Riverside County Office of Education, for retaliating against her pursuant to section 504 of the Rehabilitation Act. She argues that section 504 grants standing to individuals who are retaliated against for attempting to protect the rights of disabled people, even if they themselves are not disabled. The Riverside County Office of Education, however, argues that because Barker failed to allege that she was a "qualified individual with a disability," *see* 29 U.S.C. § 794(a), she cannot avail herself of the Rehabilitation Act's protection against retaliation. According to the Riverside County Office of Education, Section 504 was not "intended to provide redress of employment claims for persons who [are] neither disabled themselves, nor have any close relationship to a disabled person." Contrary to the Riverside County Office of Education's arguments, we find that the anti-retaliation provision of section 504 grants standing to non-disabled people who are retaliated against for attempting to protect the rights of the disabled.

In determining whether Barker has standing under section 504, we begin by examining the statute's plain meaning. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 732 (9th Cir. 2007). When "the statutory language is clear and consistent with the statutory scheme at issue, the plain language of the statute is conclusive and the judicial inquiry is at an end." *Id.* Section 504(a) states:

---

ments of Article III. *See Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). First, Barker alleges an actual injury—that she was constructively terminated from her job as a special education teacher with the Riverside County Office of Education. *See id.* Second, Barker's injury "fairly can be traced to the challenged action," because Barker alleges that she was constructively terminated based solely upon the intolerable work environment created by the Riverside County Office of Education. *See id.* (*quoting Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976)). Third, Barker's injury "is likely to be redressed" by the compensatory damages requested. *See id.* (*quoting Simon*, 426 U.S. at 38).

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a) (*codifying* Section 504). Section 504 incorporates the anti-retaliation provision of Title VI of the Civil Rights Act of 1964 by providing that:

> The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 . . . shall be available to *any person aggrieved by* any act or failure to act by any recipient of Federal assistance . . . .

29 U.S.C. § 794a(2) (emphasis added).**²** The anti-retaliation provision of Title VI of the Civil Rights Act incorporated by section 504 states:

> No recipient or other person shall intimidate, threaten, coerce, or discriminate against *any individual* for the purpose of interfering with any right or privilege secured by Section 601 of [the Civil Rights] Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this part.

34 C.F.R. § 100.7(e) (emphasis added). This regulation applies to all rights secured by the Rehabilitation Act pursuant to 34 C.F.R. § 104.61. In other words, the anti-retaliation provision in Title VI of the Civil Rights Act has been incorporated by the Rehabilitation Act so as to extend the

---

**²***See also Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 48 (1st Cir. 2000) (noting that Section 504 integrates the anti-retaliation provision of Title VI of the Civil Rights Act).

Rehabilitation Act's protections to " 'any individual' who has been intimidated, threatened, coerced, or discriminated against 'for the purpose of interfering with [protected rights]' under Title VI of the Civil Rights Act or the Rehabilitation Act." *Weber*, 212 F.3d at 48 (*quoting* 34 C.F.R. § 100.7(e)) (*citing* § 104.61) (granting standing under section 504 of the Rehabilitation Act to a mother who claimed the school system had retaliated against her personally for attempting to enforce her disabled child's rights).

**[1]** Contrary to the Riverside County Office of Education's arguments, the broad statutory language in section 504 and its corresponding anti-retaliation provision in Title VI of the Civil Rights Act does not demonstrate that Congress intended to limit standing under section 504 to only those with disabilities.[3] Section 504 and its anti-retaliation provision use the all-inclusive phrases "any person aggrieved" and "any individual," and no language further limits who "any person aggrieved" or "any individual" may be. In particular, the statutes do not include language requiring such individuals to have disabilities in order to have standing. Nor do they require the protected individual to have any "close relation-

---

[3]In *Settlegoode v. Portland Schools*, 371 F.3d 503, 512 n.6 (9th Cir. 2004), we upheld a jury's verdict in favor of a special education teacher who sued her school district for retaliation pursuant to section 504 of the Rehabilitation Act. The teacher sued because the district did not renew her teaching contract after she voiced concerns that the district was discriminating against her disabled students. *Id.* at 507. In our *Settlegoode* opinion, however, we did not directly examine whether the teacher had standing pursuant to section 504.

As a matter of interest, in an unpublished disposition we also extended protection against retaliation under section 504 of the Rehabilitation Act to a school psychiatrist who advocated on behalf of her disabled students. *See Sweet v. Tigard-Tualatin School District*, No. 03-35455, 2005 WL 19531, at *1 (9th Cir. Jan. 5, 2005); *see also Corrales v. Moreno Valley Unified Sch. Dist.*, No. EDCV-08-00040-SGL, 2008 WL 4382507, at *2-3 (C.D. Cal. Aug. 29, 2008) (granting standing under section 504 of the Rehabilitation Act to a special education teacher whose teaching contract was not renewed after she advocated for her students with disabilities).

ship to a disabled person," as argued by the Riverside County Office of Education. Indeed, the use of "such broad language" in the statutes "evinces a congressional intention to define standing to bring a private action under 504 . . . as broadly as is permitted by Article III of the Constitution." *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 47 (2nd Cir. 1997) (internal quotation marks omitted) (*citing Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972) (holding that the term "aggrieved person" in section 810(a) of the Fair Housing Act demonstrated Congress's "intention to define standing as broadly as is permitted by Article III of the Constitution")) (holding that a drug and alcohol rehabilitation center had standing pursuant to section 504 of the Rehabilitation Act to sue a city for discriminatory motives in denying a building permit).

**[2]** Such reasoning is consistent with Congress's statutory goal to protect the rights of the disabled. While "Congress could have limited the remedial provisions of the Rehabilitation Act to claims brought by or on behalf of disabled individuals, it did not do so in apparent recognition of the fact that disabled individuals may need assistance in vindicating their rights . . . ." *Weber*, 212 F.3d at 49. Indeed, empathetic people who teach and interact frequently with the disabled are those most likely to recognize their mistreatment and to advocate on their behalf.

**[3]** Furthermore, while not controlling authority, it is persuasive that after completing an investigation into Barker's complaint, the Department of Education's Office for Civil Rights concluded that "[a]dvocacy on behalf of disabled students on issues related to their civil rights, and the filing of [Office for Civil Rights] complaints, are protected activities under Section 504 and Title II."[4] *See Skidmore v. Swift & Co.*,

---

[4]Also persuasive is the Office for Civil Rights' conclusion that "the preponderance of the evidence showed that [the Riverside County Office of Education] retaliated against [Barker] in violation of Section 504 [and] Title II . . . . "

323 U.S. 134, 140 (1944) (holding that "while [non-binding agency opinions are] not controlling upon the courts by reason of their authority, [these opinions] do constitute a body of experience . . . . that give [them] power to persuade, if lacking power to control"); *see also Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1014 (9th Cir. 2006).

**[4]** Accordingly, we find that the district court erred in its determination that Barker lacked standing under section 504, and we reverse.

### B. Title II of the Americans with Disabilities Act

Barker contends that she also has standing to sue the Riverside County Office of Education under Title II of the Americans with Disabilities Act ("ADA"). Again, the Riverside County Office of Education alleges that Barker does not have standing to sue under Title II because Barker is not a "qualified individual with a disability." *See* 42 U.S.C. § 12132. We find that Barker does have standing under Title II for the same reasons that she has standing under section 504 of the Rehabilitation Act. *Cf Innovative Health Sys.*, 117 F.3d at 46-48 (holding that a drug and alcohol rehabilitation center had standing to sue the city of White Plains for its discriminatory motives in denying the center a building permit under Title II of the ADA).

**[5]** We begin by examining whether the plain meaning of the language used in Title II of the ADA and its anti-retaliation provisions grant standing to non-disabled individuals who are retaliated against for attempting to protect the rights of the disabled. *See Molski*, 481 F.3d at 732. Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or

activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The anti-retaliation provisions of Title II of the ADA state:

> (a) No private or public entity shall discriminate against *any individual* because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.
>
> (b) No private or public entity shall coerce, intimidate, threaten, or interfere with *any individual* in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

28 C.F.R. § 35.134 (emphasis added). As in our analysis of section 504 of the Rehabilitation Act, the language employed in the anti-retaliation provisions of Title II does not evince a congressional intent to limit standing to individuals with disabilities. Instead, the use of the phrase "any individual" and the absence of any language limiting standing to those with disabilities indicates Congress's intent to grant standing under Title II "as broadly as is permitted by Article III of the Constitution." *See Innovative Health Sys.*, 117 F.3d at 47 (*citing Trafficante v. Metropolitan Life Ins., Co.*, 409 U.S. 205, 209(1972)). As we recognized in our Rehabilitation Act analysis, it appears that in formulating the language in Title II's anti-retaliation provisions, Congress recognized that disabled individuals may require assistance from others to defend their rights. *Cf. Weber*, 212 F.3d at 49 (While "Congress could have limited the remedial provisions of [Title II] to claims

brought by or on behalf of disabled individuals, it did not do so in apparent recognition of the fact that disabled individuals may need assistance in vindicating their rights . . . . ").

Indeed, we find that the language of Title II's anti-retaliation provisions set forth in 28 C.F.R. § 35.134 grants standing to Barker. Clause (a) of § 35.134 protects "*any* individual" who "has opposed any act or practice made unlawful by this part." 28 C.F.R. § 35.134 (emphasis added). Because Barker engaged in activities opposing her school's special education policies that allegedly violated the ADA, we find that she had standing to pursue her claim under clause (a). Furthermore, clause (b) protects "*any* individual" from being "coerce[d], intimidate[d], threaten[ed], or interfere[d] with" by a "public entity" "on account of . . . her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act." *Id.* (emphasis added). Because Barker alleges that she was intimidated by her supervisor for her role in advocating for her students, we find that Barker also has standing under clause (b) of Title II's anti-retaliation provision.

The district court's reliance on *Zimmerman v. Oregon Department of Justice*, 170 F.3d 1169 (9th Cir. 1999) in determining that Barker lacked standing under Title II of the ADA was misguided. In *Zimmerman*, the plaintiff alleged that he was fired from his job because of his visual impairment in violation of Title II of the ADA. *Id.* at 1171. We held in *Zimmerman* that the plaintiff's claim should have been brought under Title I of the ADA instead of under Title II, because the plaintiff claimed that his employer discriminated against him because he had a disability, and employment violations are protected under "Title I: Employment." *Id.* at 1178. Here, relying on *Zimmerman*, the district court incorrectly found that because Barker also claimed that she was discriminated against by her employer, Barker would similarly only have standing under Title I of the ADA.

**[6]** Contrary to the district court's finding, Barker's situation can easily be distinguished from that in *Zimmerman*. Unlike *Zimmerman*, Barker does *not* allege that she lost her job because her employer discriminated against her because of a disability she had. Instead, Barker alleges that she was retaliated against and subsequently lost her job because she advocated for disabled students who were receiving inadequate public services—educational services provided by a public school—which are covered under Title II of the ADA ("Title II: Public Services"). *See* 42 U.S.C. § 12131, *et seq*. Public services provided to disabled students are the focus of Title II of the ADA. *See id.* Thus, Barker's claim was appropriately brought under Title II. Accordingly, the district court erred in determining that our holding in *Zimmerman* "compell[ed] a conclusion contrary to that reached by the *Weber* court."**5** Instead, our finding that Barker has standing to bring a claim against the Riverside County Office of Education under Title II of the ADA is consistent with our holding in *Zimmerman*.

## IV.   Conclusion

**[7]** Having concluded that Barker has standing to pursue her retaliation claims under both section 504 of the Rehabilitation Act and Title II of the ADA, we reverse and remand to the district court.

**REVERSED and REMANDED.**

---

**5**The district court also found that "the *Zimmerman* case foreclose[d] [Barker]'s claim based on 504 of the Rehabilitation Act," because a "side-by-side comparison of the relevant statutory language" in section 504 and Title II of the ADA shows that the two statutes are "virtually identical." Again, we find that the district court erred in finding that *Zimmerman* "compell[ed] a conclusion contrary to that reached by the *Weber* court" under section 504.